IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                              CV 14-801 JB/WPL
                                              CR 12-128 JB

ROY MADRID,

       Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Roy Madrid filed a Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255. (CV Doc. 1; CR Doc. 677.)[1] Madrid argues that his trial counsel's failure to challenge a wiretap that led to the interception of incriminating phone conversations constituted ineffective assistance of counsel. (Doc. 1 at 3.) Because Madrid's claim may be resolved on the record alone, I have not conducted an evidentiary hearing. I recommend that the motion be denied.

BACKGROUND

The federal criminal case against Madrid stems from a Drug Enforcement Administration ("DEA") investigation into Sinaloa Cartel associate and Albuquerque-based drug trafficker Homero Valera. (CR Doc. 428 at 3-6.) Valera led a drug trafficking organization ("DTO"), of which Madrid was a member. (*Id.*) Madrid, among other things, helped facilitate smuggling the DTO's cash proceeds into Mexico. (*Id.*) During the course of the investigation, agents obtained a

---

[1] All citations to "CV Doc." refer to documents filed in the civil case, CV 14-801 JB/WPL. All citations to "CR Doc." refer to documents filed in the criminal case, CR 12-128 JB. Documents filed in both cases are cited by reference to the corresponding document in the civil case.

series of wiretaps, the first of which yielded seventeen pertinent calls between Varela and Madrid, during which they discussed drug trafficking activities. (*Id.*; Doc. 1 at 3.)

On January 24, 2012, a federal grand jury filed a twenty-nine count indictment charging fifteen individuals. (CR Doc. 2.) Madrid was named in three counts: Count 1—conspiracy to distribute controlled substances, Count 5—conspiracy to launder money, and Count 27—use of a telephone to facilitate a drug trafficking offense. (*Id.*)

On February 14, 2013, Madrid and his counsel appeared before Judge Torgerson for a change of plea hearing. (CR Doc. 341.) Madrid submitted a written plea agreement to the Court, wherein he pleaded guilty to Count 5 of the indictment. (*See* CR Doc. 339.) Judge Torgerson accepted Madrid's plea of guilty and adjudged him guilty, and deferred acceptance of the plea agreement to Judge Browning. (CR Doc. 341; CR Doc. 702 at 23.)

On May 17, 2013, Madrid appeared before Judge Garcia to file an Amended Plea Agreement (CR Doc. 428) because the parties "miscalculated the guidelines." (CR Doc. 701 at 4.) The sentencing range in the Amended Plea Agreement was 37 to 63 months. (CR Doc. 428 at 6.) As Madrid clarified in his Reply (*see* Doc. 20 at 3), the parties have only one dispute relating to the Amended Plea Agreement, and it pertains to the following sentence in the "Waiver of Appeal Rights" section: "In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." (CR Doc. 428 at 9-10.)

Judge Browning held the sentencing hearing on September 9, 2013 (CR Doc. 532), accepted Madrid's Federal Rules of Criminal Procedure Rule 11(c)(1)(C) plea agreement, and on September 12, 2013, sentenced Madrid to a term of imprisonment of 57 months (CR Doc. 534 at 2; CR Doc. 700 at 18). On September 24, 2013, Madrid filed a Motion for Reconsideration of

Sentence. (CR Doc. 553.) Judge Browning held a hearing on October 24, 2013, and issued a memorandum opinion and order on June 26, 2014, denying the motion. (CR Doc. 672 at 1.)

On August 21, 2014, Madrid, through separate counsel, filed his § 2255 motion. (Doc. 1.) The United States filed a response (Doc 19), and Madrid filed a reply (Doc. 20).

DISCUSSION

Though a section heading in Madrid's § 2255 motion mentions "two violations of the United States Constitution" (Doc. 1 at 2), I, as well as the United States (*see* Doc. 19 at 14), could only discern one alleged constitutional violation—that trial counsel's failure "to challenge the admissibility of evidence obtained as a result of interception of electronic communications" constituted ineffective assistance of counsel. (Doc. 1 at 2.)

The parties do not dispute, and I find, that Madrid timely filed this motion. *See* 28 U.S.C. § 2255(f). I further find that Madrid's arguments are without merit, and recommend that the Court deny Madrid's motion, dismiss this case with prejudice, and deny a certificate of appealability.

## I. Evidentiary Hearing

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996). Under this standard, "the petitioner bears the burden of 'alleging facts which, if proved, would entitle him to relief.'" *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (citations omitted), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc). Accordingly, if the prisoner alleges facts, which, if believed, cannot be grounds for relief, there is no need for a hearing. *See id.* Additionally, the petitioner's "allegations must

be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Id.* (citations and internal punctuation omitted). If the claims relate to occurrences in the courtroom or evidence in the record, then the Court need not conduct a hearing. *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962).

Because the record alone establishes that Madrid's § 2255 motion should be denied, I did not hold an evidentiary hearing in this matter.

**II. Threshold Question: Does Madrid's Claim Fall Within the Scope of the Waiver?**

The United States urges a strict reading of the disputed sentence in Madrid's Amended Plea Agreement and argues that Madrid waived his rights to a § 2255 appeal because his motion "is a collateral attack" that "does not pertain to a claim of counsel's ineffective assistance in negotiating or entering the guilty plea or the waiver." (Doc. 19 at 17.) Madrid counters that counsel's ineffective assistance—i.e., failing to file a motion to suppress the wiretap evidence— is "directly related" to Madrid's decision to sign the plea agreement containing the waiver. (Doc. 20 at 9.)

The Tenth Circuit has held that "it is consistent with Supreme Court precedent to enforce a waiver of § 2255 rights expressly contained in a plea agreement when the collateral attack does not challenge counsel's representation in negotiating or entering the plea or the waiver." *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001). Subsequent decisions have referred to the exception referenced in *Cockerham* as the *Cockerham* exception. *See United States v. Masters*, 317 F. App'x 750, 755 (10th Cir. 2009) (unpublished); *see also United States v. Sanchez*, 2011 WL 3715252, at *3 (N.D. Okla. 2011). "For an ineffective assistance of counsel claim to fall within this exception, it must bear more than a tangential relationship to the plea agreement waiver." *Masters*, 317 F. App'x at 755.

When a defendant brings a § 2255 petition after entering a plea that contains a waiver of his rights to bring a post-conviction collateral attack, the court determines "(1) whether the disputed [claim] falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (quoting *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004)) (alteration in original).

Each party relies on a case that the opposing party fails to discuss. The United States relies on *United States v. McGuire*, 579 F. App'x 632 (10th Cir. 2014) (unpublished). In *McGuire*, the Tenth Circuit affirmed the district court's dismissal of McGuire's § 2255 motion based on ineffective assistance of counsel for, among other things, failure to move to suppress evidence. *Id.* at 636. The court determined that McGuire's collateral attack waiver was enforceable because the claim fell within the scope of the waiver, McGuire's waiver was knowingly and voluntarily entered into, and that enforcing the waiver would not result in a miscarriage of justice because "the record fail[ed] to support McGuire's assertions that his counsel's performance in negotiating his guilty plea and the plea agreement was constitutionally deficient, or that he suffered any prejudice." *Id.* The United States argues that the same reasoning applies here because Madrid obtained a "tremendously advantageous plea agreement" that was "more than 50 months below the low end of the applicable sentencing guideline range, and more than five years less that the ten-year mandatory minimum term of imprisonment that would have been imposed had Madrid been convicted at trial of Count One of the Indictment." (Doc. 19 at 20.)

Madrid, on the other hand, relies on *Sanchez*. 2011 WL 3715252. In *Sanchez*, the district court ruled that Sanchez's § 2255 motion, which included claims for ineffective assistance of counsel for failure to file a motion to suppress, fell outside the scope of the waiver provision because Sanchez "tied [counsel's] failures to his decision to plead guilty," and Sanchez's arguments "attack[ed] the validity of the plea." *Id.* at \*4. The court in *Sanchez* relied on *Jackson v. United States*, 252 F. App'x 918 (10th Cir. 2007) (unpublished), where the court affirmed the district court's holding that Jackson's motion fell outside the waiver because Jackson's "ineffective assistance of counsel claim directly ties his attorney's conduct in failing to file a motion to suppress to the advice the attorney provided him in connection with his decision to plead guilty." *Id.* at 921 n.2.

The United States overstates the significance of *McGuire*. Though *McGuire* demonstrates that some ineffective assistance claims can be barred by a collateral attack waiver, I agree with Madrid's assertion that he "has tied his trial counsel's failures with respect to the wiretap motion directly to [his] decision to plead guilty" (*id.* at 9), so *McGuire* does not apply. Accordingly, I conclude that Madrid's ineffective assistance claim falls outside the scope of the waiver provision and can proceed.

### III. Ineffective Assistance of Counsel and Title III Wiretaps

Madrid argues that "it was deficient performance for trial counsel not to file a motion on Mr. Madrid's behalf challenging the wiretap" (Doc. 1 at 5), and that "there is a reasonable likelihood" that, if challenged, "the wiretap would have been found illegal under Title III or the Government would have offered Mr. Madrid a significantly lower sentence prior to a district court ruling in order to avoid a ruling declaring the wiretap invalid under Title III." (*Id.* at 5-6.) Madrid relies heavily on an affidavit analyzing the DEA investigation from Gary Ainsworth, a

retired special agent of the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (Doc. 1-1) ("Ainsworth Affidavit"), and an affidavit from trial counsel, which states, in essence, that trial counsel was not aware of the purported weaknesses in the government's case that led to the wiretap authorizations and interception of Madrid's phone calls (Doc. 15) ("Trial Counsel's Affidavit").

The United States responds that "[c]ounsel's advocacy in this case saved Madrid more than seven years' additional potential imprisonment" (Doc. 19 at 21); counsel made a tactical decision not to challenge the wiretap because, among other reasons, "as more Defendants entered their guilty pleas, the government came into possession of more and more resources that could have been brought to bear at trial" (*id.* at 23); and "the idea that the government would have offered a plea to Madrid even lower than that made in the Amended Plea Agreement is sheer fantasy" (*id*. at 24).

"Federal investigatory wiretaps are governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–22," and "Section 2518 sets forth the requirements for issuance of a wiretap warrant." *United States v. Verdin-Garcia*, 516 F.3d 884, 889 (10th Cir. 2008). Section 2518 requires, among other things, both probable cause and a showing of necessity, i.e., "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c); *Verdin-Garcia*, 516 F.3d at 889. Section 2518, however, does not require "exhaustion of all possibilities," and the "[t]he overall burden on the government is not great." *Verdin-Garcia*, 516 F.3d at 890 (quotation omitted). "Once a wiretap has been authorized by a judge, it is presumed proper and the burden is on the defendant to prove its invalidity." *Id.*

To succeed on an ineffective assistance of counsel claim, a defendant must show 1) that his lawyer's performance was deficient, i.e., below the level expected from a reasonably competent attorney in criminal cases, and 2) that he suffered prejudice, meaning that there is a reasonable probability that the result would have been different but for his lawyer's unprofessional errors. *United States v. Cruz*, 774 F.3d 1278, 1284-85 (10th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 696 (1984)). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### a.   *Strickland* Prong One: Was Trial Counsel's Performance Deficient?

Madrid "does not fault [trial counsel] for failing to challenge the probable cause threshold," and instead argues that "[a] challenge to the necessity showing would have been the most fruitful area for a challenge to the Title III wiretap." (Doc. 1 at 4.) Madrid further argues that trial counsel's failure to investigate the wiretap meant trial counsel failed to recognize weaknesses in the government's case, and that this lack of recognition and failure to file a motion to suppress amount to constitutionally deficient representation. (*Id.* at 5.) To support his argument, Madrid relies primarily on the Ainsworth and Trial Counsel's Affidavits.

The Ainsworth Affidavit is detailed and hard to summarize, but the section headings give an overview of its contents. The headings are: Information about Mr. Ainsworth, Materials Reviewed, Case Initiation and Background, Analysis Regarding Confidential Informants and Cooperating Sources, Analysis Regarding Use of Undercover Agents, Analysis Regarding Use of Surveillance, Analysis Regarding Use of Tracking Devices, Analysis Regarding Examination of Discarded Trash, Analysis Regarding Search Warrants, Analysis Regarding Telephone

Number (505) 720-5265, and Techniques Not Utilized. (Doc. 1-1.) Madrid relies on the Ainsworth Affidavit to establish that "the agent who authored the affidavit in support of the Government's application for authorization under Title III, [sic] made a number of significant false, internally contradictory, and misleading statements" that, when omitted from the affidavit, provide an "insufficient basis for a neutral magistrate to authorize interception of wire communications under Title III." (Doc. 1 at 5.)

Trial Counsel's Affidavit tracks the section headings of the Ainsworth Affidavit and includes, among other things, the following excerpt, repeated eight times throughout the affidavit, with the few words that mirror the Ainsworth section headings changed:

> Had I conducted the analysis that Mr. Ainsworth conducted, or hired an investigator or expert with Mr. Ainsworth's qualifications to conduct the same analysis, it is very likely that I would have realized the contradictions and weaknesses regarding the claims made about the use of confidential informants and cooperating sources that are discussed by Mr. Ainsworth. Furthermore, with that knowledge, I would have informed Mr. Madrid of these weaknesses and discussed with him the pros and cons of challenging the wiretap in more detail.

(Doc. 15 at 10.) This excerpt, for example, mirrored the Ainsworth Affidavit section titled "Analysis Regarding Confidential Informants and Cooperating Sources." (*See* Doc. 1-1 at 7.)

Upon review, I fail to see the deficiency in trial counsel's decision not to file a motion to suppress. The Ainsworth Affidavit does not demonstrate glaring deficiencies in the government's case because the purported deficiencies oscillate between speculation and overstatement.

For instance, in the Analysis Regarding Confidential Informants and Cooperating Sources section, Ainsworth notes that the agent's first wiretap application affidavit (*see* Doc. 1-4) notes that the agent stated that a confidential source—CS-1—was unable to furnish information regarding all members of the DTO. (Doc. 1-1 at 7; *see also* Doc. 1-4 at 60.) Ainsworth then argues that other information in the agent's affidavit contradicts this statement,

including that CS-1 had recorded conversations and previous controlled purchases with Varela. (Doc. 1-1 at 8.) Ainsworth further notes that CS-1 did not play a role in the agent's second wiretap application affidavit, and implies that the agent's explanation for this—including that "[t]oo many, or too frequent, drug purchases between CS-1 and Varela will be risky to CS-1, and the investigation as a whole" and that "CS-1 has been unable to move into a higher role within the organization" (Doc. 1-1 at 11; Doc. 9-3 at 5)—is insufficiently documented. (*See* Doc 1-1 at 11.) Ainsworth continues that the application does not state the "exact status of CS-1" (Doc. 1-1 at 15), that the agent should have known more information about CS-1's unrelated arrest in Texas (Doc. 1-1 at 15; *see also* Doc. 1-8 at 19-20), and concludes by noting that the DEA could have employed "witness relocation," the "Witness Security Program," or "subpoena" to further involve CS-1 in the investigation (Doc. 1-1 at 15).

The rest of the Ainsworth Affidavit is as highly detailed as his analysis of CS-1. Yet all of his conclusions are equally underwhelming, and the standard of review that trial counsel would have to contend with when filing a motion to suppress—i.e., "[t]he necessity requirement is not to be treated hypertechnically," and "the overall burden on the government is not great" *Verdin-Garcia*, 516 F.3d at 890—does not suggest deficient representation. In addition, a common sense reading of the affidavits—whether by a court or Madrid's trial counsel—reveals that the agent provided adequate explanation and reasoning in his affidavits. *See id.* ("We expect the government to act in a common sense fashion, and on review we will take in all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap" (citation and internal quotations omitted)).

Moreover, Madrid's briefing does not assist me in considering the purported deficiencies because Madrid fails to discuss even one specific conclusion in the Ainsworth Affidavit. One

might surmise that Madrid would at least indicate the most egregious deficiency, yet Madrid fails

to pinpoint it. Even more curiously, Madrid faults the United States for failing to engage in

"analysis of the voluminous materials Mr. Madrid has offered in support of his [§] 2255 motion"

(Doc. 20 at 12), yet Madrid's briefing demonstrates the same lack of analysis. And though

Madrid may disagree with my appraisal of the Ainsworth Affidavit, it is Madrid's responsibility

to inform me of its pertinent conclusions, because "[c]ourts do not act as advocates for pro se

parties, let alone those represented by counsel." *In re Onyeabor*, 535 F. App'x 725, 731(10th Cir.

2013) (unpublished) (internal citation omitted).

Trial Counsel's Affidavit also fails to demonstrate a deficiency. Though trial counsel

stated that additional investigation would have led to a more robust discussion with Madrid, trial

counsel fails to take the additional step and state, explicitly or implicitly, that his shortcomings

were deficient under *Strickland*. Nor do I agree with the general proposition that an attorney's

admission that he could have conducted additional investigation so as to discuss his client's case

"in more detail" amounts to deficient performance.

Lastly, as the United States points out, trial counsel had to weigh the probability of

success with "the risk of a less advantageous disposition if he filed the motion to suppress and

lost." (Doc. 19 at 23.) And given that neither Madrid's briefing nor my reading of the case

materials yielded a single significant shortcoming with the wiretap applications and affidavits, I

cannot agree that trial counsel was deficient for choosing not to file a non-meritorious motion to

suppress.

### b.  *Strickland* **Prong Two: Was Madrid Prejudiced?**

Even if trial counsel was deficient by not filing a motion to suppress, both the reduced

sentencing exposure in Madrid's guilty plea and the large number of defendants that pled guilty

11

prior to Madrid demonstrate that Madrid was not prejudiced by this purported failing. Notably, in the context of a defendant who pleaded guilty, the prejudice prong require the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Weeks*, 653 F.3d 1188, 1201 (10th Cir. 2011) (quoting *Hill*), but Madrid does not raise this argument.

Nevertheless, as the United States points out, "Madrid's counsel obtained an extraordinary result for him: a sentence of 57 months in a case in which Madrid was facing a ten year mandatory minimum, and in which his guidelines came out to 108 to 135 months." (Doc. 19 at 21.) Given this disparity, I cannot agree with Madrid's assertion that trial counsel's enhanced understanding of the purported weaknesses of the United States' case would have resulted in "a more favorable plea agreement with a significantly lower prison sentence." (Doc. 1 at 3.)

As for the other defendants that pled guilty before Madrid, Judge Browning noted during sentencing that "Mr. Madrid is the eighth defendant out of this 15-person conspiracy that . . . I have sentenced" (CR Doc. 700 at 9), which supports the United States's contention that "as more defendants entered their guilty pleas, the government came into possession of more and more resources that could have been brought to bear at trial" (Doc. 19 at 23), which further weakens Madrid's argument that he was prejudiced. Moreover, Madrid only challenges the viability of "the first of three wiretaps" (Doc. 1 at 3), which means that the United States would likely have ample remaining evidence, including information from the other wiretaps, the underlying investigation, and the numerous guilty pleas from other defendants.

## CONCLUSION

Madrid has failed to demonstrate ineffective assistance of counsel. I therefore recommend that the Court deny Madrid's § 2255 motion (CV Doc. 1, CR Doc. 667) and that this case be dismissed with prejudice. I further recommend that the Court deny a Certificate of Appealability. *See* 28 U.S.C. § 2253(c).

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE